IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Lenora C. Dowling, and Thomas E. Dowling )<br>Plaintiffs, )<br>)<br>v. )<br>)<br>)<br>Colonial Life & Accident Company )<br>and Central United Life Insurance Company,)<br>)<br>Defendants. )<br>_____) | C/A No. 3:05-375-22<br><br>**ORDER AND OPINION<br>ON MOTION TO REMAND** |

This matter is before the court on Plaintiffs' motion to remand, filed February 25, 2005. For the reasons given below, the court concludes that remand is required for lack of subject matter jurisdiction.

**BACKGROUND**

Plaintiffs, Lenora C. and Thomas E. Dowling, filed this action in the Court of Common Pleas, Richland County, South Carolina, on January 4, 2005, on behalf of themselves and a proposed class of similarly situated persons. The complaint seeks both legal and equitable relief against two Defendants: Central United Life Insurance Company ("Central United") and Colonial Life & Accident Insurance Co., ("Colonial"). Plaintiffs allege that they have been injured by Defendants' refusal to fully pay benefits under an insurance contract.

The complaint alleges that Plaintiffs purchased a policy of cancer insurance called "Cancer Advantage" from Colonial on or about April 13, 1992, pursuant to which Colonial was obligated to

pay certain benefits if either Plaintiff was diagnosed with cancer. On or about January 4, 2002, Central United acquired the Cancer Advantage block of business from Colonial, including Plaintiffs' policy, through five agreements (the "Agreement") executed by Defendants.[1]

In June of 2004, Plaintiff Thomas Dowling was diagnosed with a re-occurrence of cancer, which required extensive chemotherapy. After Plaintiff incurred charges and was billed for his treatment, he submitted proof of loss, medical records, bills, and other documents to Central United. Plaintiffs allege that Central United paid some of the benefits due to them under the policy, but denied payment for some benefits associated with the chemotherapy treatment. Plaintiffs allege that Defendants were arbitrary and capricious and fraudulently ignored their claims manuals and adjusting policies and practices in such denials. Plaintiffs allege that "they have no conclusive knowledge about which company, if not both, will be liable for claims asserted herein; and therefore, [P]laintiffs name both parties as [D]efendants." Complaint, ¶ 13.

Plaintiffs allege that they are bringing this suit as a class action for a proposed class defined as follows:

> All persons residing in South Carolina who are/were Cancer Advantage policyholders or beneficiaries with Colonial ... and who have been denied benefits under the Radiation/Chemotherapy provision of their policy by Central United ... since January 4, 2002, and/or will be denied benefits under the Radiation/Chemotherapy provision of their policy by Central United ... in the future. The class specifically excludes any Cancer Advantage insurance policies issued and or purchased from Colonial ... through any employee benefit plan governed by [ERISA].

---

[1] The Agreement was signed by Colonial and Central United on November 13, 2001 and consists of: 1) a coinsurance reinsurance agreement, 2) a reinsurance trust agreement, 3) an agreement for reinsurance, 4) an assumption reinsurance agreement, and 5) an administrative services agreement.

Plaintiffs seek damages for breach of contract, breach of contract accompanied by a fraudulent act, and bad faith refusal to pay first party benefits. Plaintiffs further seek declaratory and injunctive relief, prohibiting Defendants from engaging in the alleged improper and unlawful practices. Plaintiffs also seek attorneys' fees and punitive damages.

## DISCUSSION

This action was removed based on the assertion of diversity jurisdiction pursuant to 28 U.S.C. § 1332. In removing, Defendants asserted that the non-diverse Defendant, Colonial, had been improperly joined, and that the amount in controversy exceeded $75,000. Plaintiffs' motion to remand challenges only the first of these assertions.

Defendants maintain that the complaint fails, as a matter of law, to state any claim against Colonial. Defendants, both of whom are represented by the same counsel, argue that removal was proper because Colonial was fraudulently joined. Defendants contend that the named Plaintiffs cannot possibly recover against Colonial for the claims alleged in the complaint. The complaint alleges that there may be some unknown basis upon which Colonial may be liable to the Dowlings, but Plaintiffs allege no wrongful conduct by Colonial that Defendants believe could serve as a basis for liability against Colonial. Furthermore, Plaintiff Dowling was not diagnosed with a re-occurrence of cancer until June of 2004, more than two years after Colonial transferred the Cancer Advantage block of business to Central United.

In their memorandum supporting the remand motion, Plaintiffs allege that all members of the putative class would have purchased their Cancer Advantage insurance policies directly from

Colonial, creating a contractual relationship between each putative class member and Colonial. Colonial received premiums, adjusted claims and paid benefits under the policies until November 15, 2001, when the agreements between Defendants became effective. Between November 15, 2001 and January 4, 2002, Colonial continued to administer the policies, while the premiums were diverted to a trust. The proceeds of the trust were the property of Central United, who Plaintiffs say was bound as a re-insurer and co-insurer during this time.

On January 4, 2002, Central United undertook administration of the policies and remained the co-insurer and reinsurer of the policies until the "assumption effective date," which the Agreement defined as "the date on which all required assumption approvals and required assumption consents have been obtained in the state where such coinsured policy was issued or delivered." The Insurance Department of South Carolina approved the assumption of the policies on February 11, 2002.

Plaintiffs argue, therefore, that between January 4, 2002 and February 11, 2002, though Central United administered the claims and received premium payments, it remained in a coinsurance/reinsurance relationship with the policyholders, without having yet "assumed" the policies. Any putative class member whose claim was adjusted during this time (the period of coinsurance/reinsurance) must – according to Plaintiffs – bring suit against Colonial, because a contractual relationship remained between the putative class member and Colonial, the primary insurer. Plaintiffs do not identify any individuals whose claims were adjusted during such period.

In response, Defendants argue that only the claims of the named Plaintiffs should be considered for purposes of deciding the jurisdictional issue, not the speculative claims of unnamed

putative class members. Defendants conclude that the named Plaintiffs cannot recover against Colonial because their claims did not arise until more than two years after the assumption effective date; therefore, Colonial was fraudulently joined.

### I.     Standard for Assertion of Subject Matter Jurisdiction

The party removing an action bears the burden of demonstrating that jurisdiction properly rests with the court at the time the petition for removal is filed. *See St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 291 (1938); *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction is strictly construed. *Mulcahey,* 29 F.3d at 151. If federal jurisdiction is doubtful, remand is necessary. *Id.*

To be removable to federal court, a state action must be within the original jurisdiction of the district court. *See* 28 U.S.C. § 1441. District courts have original jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332(a)(1).

### II.    Fraudulent Joinder Standard

When a plaintiff has fraudulently joined a nondiverse defendant, a district court may retain jurisdiction and disregard the nondiverse party. *See Mayes v. Rapaport*, 198 F.3d 457, 461 (4th Cir. 1999). To show fraudulent joinder of a party, a removing party "must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transportation, Inc.,* 187 F.3d 422, 424 (4th Cir. 1999) (quoting *Marshall v. Manville Sales*

*Corp.,* 6 F.3d 229, 232 (4th Cir. 1993)). "The party alleging fraudulent joinder bears a heavy burden–it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley,* 187 F.3d at 424.

The Fourth Circuit has described this standard as "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id.* (citations omitted). All the plaintiff needs to show is that there is a "glimmer of hope," *Mayes,* 198 F.3d at 466, or a "slight possibility of a right to relief" in state court. *Hartley,* 187 F.3d at 426.

### III.  Viability of Claims Asserted Against Colonial

From the face of Plaintiffs' complaint, the reasoning behind Colonial's inclusion as a defendant is that "even though the Cancer Advantage policies were transferred to Central United from Colonial, [Plaintiffs] have no conclusive knowledge about which company, if not both, will be liable for claims asserted herein ...." Complaint, ¶ 13. Defendants argue that this reasoning would justify the joinder of any party.

In their memoranda, Plaintiffs identify two classes of claims: those of the putative class members whose claims were adjusted between January 4, 2002 and February 11, 2002, and those of the Dowlings themselves. The latter are based on the proposition that the Dowlings did not consent to the assumption, or novation, of their insurance policies and maintain a contractual relationship with Colonial.

### A.  Claims of the Putative Class Members

Federal court subject matter jurisdiction is measured at the time of removal. *Pullman Co. v. Jenkins,* 305 U.S. 534 (1939). *See also St. Paul Mercury Indem. Co. v. Red Cab. Co.,* 303 U.S. 283,

6

289-290 (1938) (amount in controversy determined at the time that the complaint is filed)*; Porsche Cars N. Am., Inc. v. Porsche.Net,* 302 F.3d 248, 255-56 (4th Cir. 2002) (a court determines the existence of diversity jurisdiction at the time the action is filed); *Higgins v. E.I. DuPont de Nemours & Co.,* 863 F.2d 1162, 1166 (4th Cir. 1988) (diversity of citizenship must be established at the time of removal).

For citizenship determination, it is well settled that only the citizenship of the named class representatives is considered in determining whether or not diversity jurisdiction exists. *See Snyder v. Harris,* 394 U.S. 332, 340 (1969); *Supreme Tribe of Ben-Hur v. Cauble,* 255 U.S. 356 (1921). Similarly, the amount in controversy examination in diversity class actions focuses on the claims of the named plaintiffs. *Rosmer v. Pfizer, Inc.,* 263 F.3d 110 (4th Cir. 2001) (so long as one named plaintiff has a claim which satisfies the amount in controversy requirement, giving a federal court original jurisdiction, then § 1367 confers supplemental jurisdiction in diversity class actions).

The procedural necessities which focus the above considerations on class representatives support Defendants' position. Defendants cite cases from other jurisdictions that have agreed that, in the fraudulent joinder analysis, only the claims of the named plaintiffs should be considered. *See Oxford v. Williams Companies, Inc.,* 137 F.Supp.2d 756, 762-63 (E.D.Tex., 2001); *Miller v. Home Depot, U.S.A., Inc.*, 99 F.Supp.2d 502, 508 (W.D.La. 2001). This rationale is consistent with the focus on named plaintiffs used in determining whether a class action has become moot: prior to class certification, if the claim of a named representative becomes moot, the entire action becomes moot. *Board of School Commissioners v. Jacobs,* 420 U.S. 128, 129 (1975) (class representatives graduated without class having been certified; case was moot as to class). *See also Anderson v. Westinghouse*

*Savannah River Co.,* No. 03-1151 (4th Cir. May 4, 2005) (class representative's claims adjudged to be without merit; on remand, district court instructed to consider whether class should be certified if proper plaintiff presents himself as class representative, but to dismiss if no such representative comes forward within a reasonable time); *Goodman v. Schlesinger,* 584 F.2d 1325 (4th Cir. 1978) (because named plaintiff's individual claims dismissed, named plaintiff not allowed to pursue class claims on remand).

If Plaintiffs had relied solely on the potential claims of putative class members in their arguments in favor of remand,[2] Colonial would appear hardly more than a sham defendant. However, particularly in their reply memorandum, Plaintiffs offer support for their argument that the Dowlings themselves can recover against Colonial.

### B.    Claims of the Named Class Representatives

Plaintiffs allege that they can maintain an action against Colonial because they still maintain privity of contract with Colonial. Plaintiffs assert that, despite the assumption reinsurance agreement executed between Colonial and Central United, and despite the fact that the assumption effective date occurred well before Plaintiffs' claims arose, Plaintiffs never consented to the assumption. Consequently, Plaintiff's argue, there was no effective novation of their original Cancer Advantage contracts with Colonial.

Defendants do not address the issue of novation at all. With regard to Plaintiffs' consent to the assumption, Defendants offer only a footnote in their opposition memorandum:

---

[2]For this position, Plaintiffs have offered no case law.

> There is no requirement under South Carolina law that the insured expressly consent to the assumption for it to be effective. In any case, the Dowlings' consent was manifested by the fact that after they were notified of the assumption, they made their premium payments and claims submissions to Central United instead of Colonial.

*Defendants' Memorandum in Opposition to Motion for Remand*, p. 5 n.2.

### 1.     Novation

South Carolina law does not clarify the contractual relationship or respective liabilities of an assumption agreement, or how to determine when and whether one exists. Novation, however, is explained as follows: "In South Carolina, a novation is a mutual agreement between all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation." *Morgan v. Kemper Insurance Co.,* 754 F.2d 145 (4th Cir. 1985) (*citing Superior Automobile Ins. Co. v. Maners*, 199 S.E.2d 719 (S.C. 1973)); *Wayne Dalton Corp. v. Acme Doors, Inc.,* 394 S.E.2d 5, 7 (S.C. App. 1990). The substitution of one party for another can also be considered a novation. *Callaham v. Ridgeway,* 135 S.E. 646, 649 (1926). *See also Segars v. Segars,* 310 S.E.2d 156, 158 (S.C. App. 1983) (party to a contract cannot relieve himself of the contract's obligation by merely assigning contract to third person; however, other party to the contract may agree to accept the performance of the assignee in the place of that of the assignor, creating a new contract by novation). "Novation is the substitution *by mutual agreement*, of one debtor, or one creditor, for another, whereby the old debt is extinguished." *Greenwood Cotton Mill v. Pace,* 174 S.E. 473, 476 (S.C. 1934) (emphasis in original). "The circumstances attending the transaction alleged to be a novation must show the intention to substitute a new obligation in place of the existing

one." *Morgan,* 794 F.2d at 148 (*citing Superior Automobile,* 199 S.E.2d at 722). There must be an intention to create a novation and the party asserting novation bears the burden of proof. *Id.*

Express written consent is not necessarily required for a valid novation: "the law is clear ... that a novation may be proved by circumstantial evidence and by the conduct of the parties to the original contract." *Gulf Oil Corp. v. Texas City Refining,* 218 F.2d 196, 200 (4th Cir. 1954).

> The occurrence of a novation is not to be presumed but must be satisfactorily shown by the party who asserts it. Where . . . the novation consists in the substitution of one debtor for another, it is, of course, necessary to show the consent both of the creditor and of the substituted debtor as well as that of the original debtor. The effect of the novation is to discharge the original debtor and substitute the obligation of the new debtor. And this must have been in accordance with the intention of the parties. It is, however, not necessary to show an express consent of the parties as it may be implied and inferred from circumstantial evidence.

*Id.* (*citing MacKenzie Laboratories v. Lawrence,* 80 F.Supp. 710, 713 (D.Md. 1948)). The court in *Gulf Oil* upheld the trial court's finding of a novation. In doing so, it found the plaintiff's communications and exclusive dealings with the substituted debtor consistent with an intention not to assert a claim against the original debtor, amounting to an implied, if not express, promise to accept the substituted debtor as the sole debtor. *Id.* at 201. "Following the principle generally applicable to the formation of contracts, the consent of parties to a novation may be established by circumstances showing such assent as well as by expressed words." 30 Williston on Contracts § 76:43 (4th ed.). What kind of conduct and circumstances create consent, however, are not specified in South Carolina law.

The communications between the policyholders and Colonial are relevant to the question of mutual assent. Though the record contains the Agreement between Colonial and Central United,

10

there is little evidence of the contractual relationship between Colonial or Central and the Plaintiff policyholders, and no evidence of the original agreement between Colonial and Plaintiff policyholders.[3] The limited documents include 1) the November 15, 2001 letter from Colonial notifying policyholders of Central United's impending acquisition of their Cancer Advantage policy; 2) the Colonial "Policyholder Question and Answer" information sheet; and 3) the certificate of assumption that was presumably mailed to Plaintiffs. None of these documents shed much light on the nature of the contractual relationship between Colonial and the Dowlings and the extent to which that relationship might be affected by Central United's acquisition of the Cancer Advantage business. These documents do not mention novation, they do not alert the policyholder that Colonial's contractual liability on the policy will be extinguished, nor do they indicate that the policyholder has any ability or opportunity to refuse consent.[4]

---

[3]The parties have not addressed whether the original agreement contained language applicable to an assumption of Colonial's liabilities and the resulting contractual relationship between the policyholders and any such third party. *See Morgan v. Kemper Insurance Co.,* 754 F.2d 145 (4th Cir. 1985) (novation of agreement between two related insurers and agent did not exist when third related insurer was added to original agreement, where agreement indicated that novation was not intended and provided that execution of agreement by more than one of the related insurers would constitute separate and independent agreement between agent and each insurer).

[4]The November 15, 2001 letter announces that Colonial has "found a partner, [Central United], to acquire and provide service for ... Cancer Advantage, beginning on or about January 4, 2002," that "neither the policy nor its benefits are changing" and that "this change does not affect any other Colonial products or services."

The Colonial question and answer information sheet tells policyholders that they "need to do nothing at this time" that "all benefits and provisions of [their] current policy will remain the same, there is no need for Central United to issue a new policy" and that they will receive an assumption certificate, "which is a document stating that Central United has assumed responsibility for [their] service." It also confirms that their "Colonial sales representative will remain the same and ... Central United will continue to work closely with [their] current representative."

11

In any case, the existence of a novation is probably a question for the jury. "Whether there has been a novation is ordinarily a question of fact; although the burden of proof is on the one claiming a novation, who must prove a special agreement for substitution, this may be established by evidence of an express understanding to this effect or by circumstances showing such assent." 30 Williston on Contracts § 76:43 (4th ed). *See also, General Electric v. Lombardi,* 173 F.Supp. 841 (D.Md. 1959) (conclusion that acceptance of novation was implied from the facts and circumstances was finding of fact by trial court after reviewing evidence and testimony).

Defendants have offered little in the way of evidence or argument of an express understanding or circumstances showing that Plaintiffs consented to a novation. As they are the party alleging novation, Defendants bear the burden of proof on this issue.

### 2. Assumption Reinsurance

South Carolina law also offers little guidance on assumption reinsurance, which is the type of reinsurance Defendants allege is at issue in this case. The only statutory definition is found in the South Carolina Regulations on Insurance, which define "reinsurance" as "the assumption of a portion of the risk on a policy by another insurer." Regulation 69-3 (Definitions). Regulation 69-48, which covers "Life and Health Reinsurance Agreements," qualifies that "this regulation shall not apply to assumption reinsurance," but it does not define the term.

---

The certificate of assumption states that Central United "has reinsured and assumed all of the contractual liabilities of Colonial ... under this policy on the same terms and conditions as set forth in this policy" and that policyholders should "submit all claims under this policy ... and all premiums due under this policy to Central United."

The South Carolina Supreme Court has stated:

Reinsurance . . . means one thing only – the ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured, which is the ceding company, and in which contract the ceding company retains all contact with the original insured, and handles all matters prior to and subsequent to a loss. The true reinsurer is merely an insurance company or underwriter which deals only with other insurance companies as its policyholders.

*Carolina National Insurance Co. v. South Carolina Tax Commission,* 182 S.E.2d 878 (S.C. 1971). *See also, Southeastern Fire Insurance Co. v. South Carolina Tax Commission,* 171 S.E.2d 355 (S.C. 1969) ("Reinsurance, in the strict sense of the word, may be defined as a contract whereby one party, the reinsurer, agrees to indemnify another, the reinsured, either in whole or in part against the loss or liability which the latter may sustain or incur under a separate and original contract of insurance with a third party, the original insured.") (*citing* 44 Am.Jur.2d Insurance § 1857 (1969)).[5] *See also, McPherson v. Michigan Mutual Insurance Co.,* 412 S.E.2d 445, 464 (S.C. 1991) ("reinsurer . . . has no contractual relationship with [plaintiff insureds] and may not be sued by them. A contract of reinsurance is a contract of indemnity which flows only to parties in privity of contract with the indemnitor.").

The above South Carolina cases define reinsurance as an indemnity agreement. Defendants argue that the Agreement in this case, however, is an assumption, in which Central United "stepped into the shoes" of Colonial and assumed all contractual responsibility, including direct liability to the

---

[5]The latest edition of American Jurisprudence contains a similar definition: "Reinsurance has thus been generally defined as a contract under which one party, the reinsurer, agrees to indemnify another, the reinsured, either in whole or in part, against a loss or liability, which the reinsured may sustain under a separate contract of insurance with the original insured." 44A Am.Jur.2d Insurance § 1809 (2004).

policyholders. "An assumption agreement results in the elimination of the ceding company's participation or interest in insurance policies it sells to the company assuming the risks." 44A Am.Jur.2d Insurance § 1814. "An insured may have a direct action against a reinsurer that has assumed and agreed to perform the original insurer's contract, although only one recovery for the loss is allowed." *Id.*

The United States Supreme Court clarified this distinction in *Colonial Life Insurance Co. v. Commissioner of Internal Revenue,* 491 U.S. 244, 247 (1989):

> Reinsurance comes in two basic types, assumption reinsurance and indemnity reinsurance. In the case of assumption reinsurance, the reinsurer steps into the shoes of the ceding company with respect to the reinsured policy, assuming all its liabilities and its responsibility to maintain required reserves against potential claims. The assumption reinsurer thereafter receives all premiums directly and becomes directly liable to the holders of the policies it has reinsured. In indemnity reinsurance ... it is the ceding company that remains directly liable to its policyholders, and that continues to pay claims and to collect premiums. The indemnity reinsurer assumes no direct liability to the policyholders.

*Id*. at 247.

It appears fairly clear from the Agreement between Colonial and Central United that assumption reinsurance was the intended arrangement between the two insurance companies for the Cancer Advantage block of policies. The assumption was to become final on the assumption effective date, and was to constitute a novation of Colonial's original insurance contracts with the policyholders.[6]

---

[6]"[O]n the closing date, [Colonial] and [Central United] shall enter into the assumption agreement, and [Central United] shall use its best efforts to obtain all approvals of any insurance regulatory authorities that may be required for the assumption and novation of the coinsured policies by [Central United] on an assumption reinsurance basis." *Agreement for Reinsurance,* ¶ 2.6.

Assuming that Central United did enter into an assumption agreement, becoming directly liable to the policyholders, Defendants may still have to prove consent by the policyholders in order to relieve Colonial of liability:

> The existence of an assumption depends on proof of the ordinary elements of novation, including the agreement of all parties to the new contract, and the extinguishment of the old one. Therefore, an insurance company cannot transfer its liability to another company by reinsurance, and compel the policyholders to accept the new company as the insurer, but the policyholder may elect to accept or reject the new insurer. Absent the insured's consent, a contract by which a reinsurer assumes policies results in both the original insurer and the reinsurer being directly liable to the original insured.

44A Am.Jur. 2d Insurance § 1814 (citations omitted).

Other jurisdictions that have encountered this issue have found that, absent consent from the policyholder, an assumption reinsurance agreement does not eliminate the original insurer's liability to the policyholder. *See Vetter v. Security Continental Ins. Co.,* 567 N.W.2d 516 (Minn. 1997) (no novation, absent evidence of original insured's clear and definite intent to release insurer and look only to reinsurer); *Travelers Indemnity Co. v. Gillespie,* 785 P.2d 500 (Cal. 1990) (absent insured's consent, reinsurer's assumption of policies results in both original insurer and reinsurer being directly liable to original insured). Though lack of consent may not invalidate the assumption agreement nor constitute a breach of the insurance contract, "such consent is necessary only to release the first

---

"The reinsurance effected by this agreement shall have the effect of creating a novation under all of the assumed policies in accordance with each of the terms and conditions thereof .... On the appropriate assumption effective date, [Central United] shall be the successor of [Colonial] with respect to the assumed policy, and such assumed policy shall be the direct obligation of [Central United], and [Colonial] shall have no further rights or liability thereunder. The policyholder and any persons insured under the assumed policy shall thereafter disregard [Colonial] as a party to the assumed policy and treat [Central United] as if it had been originally obligated under the assumed policy." *Assumption Reinsurance Agreement,* ¶ 2.3.

15

insurer from liability under the insurance contract." *Epland v. Meade Insurance Agency Associates,* 564 N.W.2d 203 (Minn. 1997).

Again, consent need not necessarily be formally expressed in writing. In the *Epland* case, the court found that "as a matter of law, the [plaintiffs] consented to the . . . assumption agreement by payment of premiums to the [assuming reinsurer], thus releasing [ceding insurer] from its obligation under the policy." *Epland,* 564 N.W.2d at 207.[7] *See also Tyner v. Cherokee Insurance Co.,* 205 S.E.2d 380, 381 (S.C. 1974) (whether cancellation of an insurance policy by mutual agreement has been effected depends on the intention of the parties as evidenced by their acts, conduct and words, taken in connection with the attendant circumstances); *Northwestern Nat. Life Ins. Co. of Minneapolis, Minn. v. Gray,* 161 F. 488 (8th Cir. 1908) (Plaintiff did not object to terms of the new company and made payments under the policy, thereby consenting to a novation, such that plaintiff was bound by the terms of the contract). *But see* Graydon S. Staring, Law of Reinsurance § 16:2 ("The mere assumption of the reinsurer's obligations by another, even accompanied by an agreement, or followed by a practice, of the reinsured to pay premiums directly to the assuming reinsurer will not relieve the original reinsurer of its obligations; only a novation will do that.").

It is not immediately obvious whether or not under South Carolina law Plaintiffs have consented to the terms of the assumption reinsurance agreement thereby effecting a novation.[8] On

---

[7]The assumption notice in that case, however, included a statement indicating that by sending payments to the assuming reinsurer, the plaintiffs would be consenting to a release. The assumption notification sent to the Dowlings contained no such statement.

[8]South Carolina has not passed legislation addressing the role of policyholder consent in assumption reinsurance agreements or the nature of a reinsurer's relationship to an original policyholder. Other states, including North Carolina, Vermont, Kansas, Maine, Minnesota, Nebraska, Oregon, and Rhode Island, have passed such legislation.

the one hand, Plaintiffs paid their premiums and submitted their claims to Central United. An argument could be made that, through their actions and the circumstances surrounding the transaction, Plaintiffs consented to a novation of their policy and do not have a cause of action against the ceding insurer, Colonial.

However, there are some facts which, absent South Carolina statutory and case law guidance, might lead to a different conclusion.[9] Neither the assumption certificate, nor the letter of November 15, 2001, nor the information sheet sent to policyholders indicates that a novation was intended or that Colonial's liability on the policy would be extinguished. None of those documents indicate that the Dowlings had the option of rejecting the substitution of Central United for Colonial as the insurer of their Cancer Advantage policies. Those documents do not inform policyholders that payment of premiums or submission of claims to Central United would constitute consent. In addition, Plaintiffs claim that they never intended to consent to the novation. Stretched though their argument may seem, this court cannot conclude that there is no "glimmer of hope" for Plaintiffs to succeed in proving in a state court that a novation was not effected.

Plaintiff's "evidence" regarding the absence of a novation is not found in the allegations of the complaint - rather, support is found in Plaintiffs' arguments in their memoranda and accompanying

---

[9]Some states have legislated specific requirements for assumption agreements, and the consents required thereunder. *See, e.g.,* Minn.Stat. § 60A.09, subd. 4a (1996) (The ceding company may be released from liability only if the insured consents in a signed writing to a release of the first company, and if the insured has been "informed in writing by the insurer of the circumstances relating to and the effect of the assumption."); North Carolina Gen.Stat.Ann. § 58-10-30 (1996) (notice of transfer shall be provided to each policyholder, which informs the policyholder of his or her right to consent or reject transfer and novation, procedures for consenting or rejecting, the effect such consent or rejection will have on policyholder's rights, and shall include a response card on which policyholder indicates acceptance or rejection).

documents. In considering fraudulent joinder, however, the court may look beyond the pleadings to the evidence in the record. "The court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *AIDS Counseling and Testing Centers v. Group W. Television, Inc.,* 903 F.2d 1000, 1004 (4th Cir. 1990).

For the reasons stated above, after considering the entire record and resolving all issues of law and fact in Plaintiffs' favor, the court concludes that there is some possibility that Plaintiffs might be able to establish a right to relief against Colonial, and Colonial's joinder was not fraudulent. Under these circumstances, this court lacks subject matter jurisdiction to decide this case and is compelled to remand the matter to state court.

This court also finds that Defendants' stated grounds for removing this case were not unreasonable and declines to award costs and fees as requested by Plaintiffs under either 28 U.S.C. § 1447(c) or Fed. R. Civ. P. 11. Defendant Colonial Life has also filed a motion to dismiss the claims against it. Because this court has concluded that it does not have jurisdiction in this case, it declines to decide that motion.

## CONCLUSION

Accordingly, the action is remanded to the Court of Common Pleas, Richland County, South Carolina. A certified copy of this order of remand shall be mailed by the Clerk of this court to the Clerk of the Court of Common Pleas, Richland County, South Carolina.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
May 16, 2005

C:\temp\notesB0AA3C\05-375-tp-dowling v. colonial-fraudulent joinder.wpd